IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TASHA R. SMALLWOOD, for ) | |
| KEVIN SMALLWOOD, deceased, ) | |
| ) | |
| Plaintiff, ) | Case No. 7:09cv00090 |
| ) | |
| v. ) | |
| ) | By: Hon. Michael F. Urbanski |
| MICHAEL ASTRUE, ) | United States Magistrate Judge |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Tasha R. Smallwood, on behalf of her deceased husband Kevin Smallwood ("Smallwood"), brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying his claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under the Social Security Act (the "Act"). On appeal, Smallwood argues that the Commissioner erred by failing to properly evaluate his subjective complaints. Smallwood further claims that this case should be remanded for consideration of an opinion as to his residual functional capacity, which was submitted to the Appeals Council and incorporated into the record. After carefully reviewing the record, the undersigned finds that the Administrative Law Judge's decision is supported by substantial evidence and that remand is not appropriate in this case. As such, it is **RECOMMENDED** that the Commissioner's decision be affirmed.

I.

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel,

270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"),[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

---

[1] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. §§ 404.1529(a), 416.929(a).

**II.**

Smallwood was born in 1971 (Administrative Record, hereinafter "R." 22, 110), and at the time of the ALJ's decision was considered a "younger individual" under the Act. 20 C.F.R. §§ 404.1563(b), 416.963(b). Smallwood received his GED (R. 22), and worked as an electrician prior to his alleged onset date of April 4, 2002. (R. 16, 22, 30-31, 110, 160.) Smallwood claims disability due to a back injury, nerve damage in his back and left leg, acid reflux, and carpal tunnel syndrome in both wrists. (R. 159.)

Smallwood's claims were denied initially and again upon reconsideration. (R. 58, 67.) Smallwood died on December 8, 2007,[2] prior to the administrative hearing. (R. 16.) His wife, Tasha Smallwood, was substituted as a party on his behalf (R. 16), and testified at the administrative hearing held on May 16, 2008. (R. 24-53.) In an opinion dated July 21, 2008, the Administrative Law Judge ("ALJ") found that Smallwood suffered from status post lumbar fusion, laminectomy times two, sacroilitis, obesity, and failed back surgery, all of which qualify as severe impairments pursuant to 20 C.F.R. §§ 404.1520(c), 416.920(c). (R. 19.) The ALJ also found that Smallwood had the RFC to perform a range of light work, which allowed him to alternate between sitting and standing. (R. 19.) The ALJ further held that Smallwood could occasionally climb, balance, kneel, crawl, stoop and crouch; he needed to avoid working around hazardous machinery, at unprotected heights, or on vibrating surfaces; he had to avoid repetitive bending or twisting at the waist; and he could not climb ladders, ropes or scaffolds. (R. 19.) Although Smallwood's impairments prevented him from performing his past relevant work, the ALJ held there are a significant number of jobs in the national economy that he

---

[2] The death certificate lists the cause of death as acute combined methadone and alprazolam poisoning. (R. 200.)

could have performed. (R. 22.) Thus, the ALJ found Smallwood not to be disabled under the Act. (R. 23.) The Appeals Council denied Smallwood's request for review and this appeal followed. (R. 1-5.)

### III.

On appeal, Smallwood argues that the ALJ improperly evaluated his complaints of pain and erred in concluding his complaints are not credible. However, allegations of pain and other subjective symptoms, without more, are insufficient to establish disability. Craig v. Chater, 76 F.3d 585, 592 (4th Cir. 1996). When faced with conflicting evidence in the record, it is the duty of the ALJ to fact-find and to resolve any inconsistencies between a claimant's alleged symptoms and his ability to work. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996); accord Melvin v. Astrue, No. 606cv32, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007). Accordingly, the ALJ is not required to accept Smallwood's assertion that he is disabled by pain; instead, the ALJ must determine through an examination of the objective medical record whether Smallwood has proven an underlying impairment that could reasonably be expected to produce the symptoms alleged. Craig, 76 F.3d at 592-94 (stating the objective medical evidence must corroborate "not just pain, or some pain, or pain of some kind or severity, but the pain the claimant alleges [h]e suffers.").

Contrary to plaintiff's assertions, the ALJ properly evaluated Smallwood's subjective complaints in accordance with Social Security Ruling ("SSR") 96-7p. (R. 20.) Pursuant to this two-step process, the ALJ determined that there is an underlying medically determinable impairment that could reasonably be expected to produce the claimant's pain or symptoms, then evaluated the intensity, persistence and limiting

5

effects of the symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. (R. 21.) See also 20 C.F.R. §§ 404.1529, 416.929. The ALJ acknowledged that Smallwood had a number of medical problems (R. 20) and determined that certain of these impairments were severe: status post lumbar fusion, laminectomy times two, sacrolitis, obesity and failed back surgery. (R. 19.) While Smallwood's impairments could reasonably be expected to produce his alleged symptoms, she determined that his claimed level of limitation was not supported by the objective evidence of record. (R. 21.) Substantial evidence supports this finding.

Smallwood had two back surgeries. Prior to his initial surgery on June 13, 2002, he complained of pain in the low back and left lower extremity. (R. 338.) An MRI documented a disc herniation at L5-S1. (R. 331.) Two weeks following surgery, he noted improvement, ambulated without difficulty, and had negative straight leg raising. (R. 303.) He was instructed to increase his activities as tolerated. (R. 303.) He was scheduled to return to work September 1, 2002, with a 25-pound lifting, pushing, and pulling restriction. (R. 301.) Notes from August 14, 2002, indicate Smallwood was "leery about returning [to] work with even a light duty capacity," given the fact that he was experiencing worsening pain. (R. 297.) His pain medications were renewed, he received a left sacroiliac injection, and he was encouraged to continue physical therapy. (R. 295, 297.) Two days before he was scheduled to return to work, Smallwood presented to the Virginia Spine Institute claiming he "continues to have severe ongoing disabling 100% axial back pain" with no radicular symptoms. (R. 293.) There were no new diagnostic studies to review. (R. 293.) Nevertheless, notes from this August 29, 2002 office visit state "[a]t this time, we are recommending an anterior lumbar interbody

6

fusion at L5/S1 given the fact that he has severe disc degeneration and disc collapse at L5/S1 with normal adjacent discs." (R. 283, 294.)

This second surgery was performed on January 23, 2003. (R. 312.) Diagnostic studies examined at his first postoperative visit revealed "an excellent postoperative result." (R. 279.) Notes from Dr. Hasz at the Virginia Spine Institute state that Smallwood's pain had improved following surgery. (R. 211, 265, 269, 273.) Examinations consistently revealed 5/5 strength in the lower extremities and negative straight leg raising. (R. 205, 209, 211, 216, 232, 247, 249, 259-60, 265, 267, 273, 346, 348, 355, 408.) Other clinical findings from the Virginia Spine Institute, with which Smallwood treated over fifty times from 2002 to 2006, indicate he stood upright with good balance, ambulated well without difficulty, sat upright with good balance, was neurologically intact, and sat comfortably on the examining table without difficulty. (R. 211, 216, 218, 222, 223, 265, 267.) Though he complained of back and leg pain, it was noted that he "is functional" and his pain is controlled by medication. (R. 213, 215, 217, 220, 234, 247.) Notes from April, 2006, reveal Smallwood had been doing "reasonably well until a couple of weeks ago when because of a new baby among other things, his back and leg symptoms have flared." (R. 209.) On December 31, 2007, a progress note from Wythe Medical Associates included a normal musculoskeletal examination. (R. 413-14.)

Diagnostic studies performed two weeks following his second surgery showed appropriate placement and positioning of instrumentation with no signs of loosening. (R. 278-79.) An MRI taken in April, 2003, eight to nine weeks post-surgery, showed no evidence of disc herniation or pinching of the nerve. (R. 245, 271, 323.) A lumbar

myelogram in November, 2003, revealed no evidence of nerve root impingement, a small amount of scar tissue, and showed that the hardware was in a satisfactory position. (R. 237.) Lumbar spine radiographs taken on January 19, 2005, showed that the fusion appeared very well consolidated and instrumentation was in good position. (R. 228.) In March, 2007, x-rays of the lumbar spine show adequate fusion across L5-S1 with no other significant findings. (R. 389.) An MRI on April 12, 2007, showed adequate fusion with intact implants, good alignment of the lumbosacral spine, no evidence of postsurgical fibrosis, and no evidence of disc herniation or other significant pathology. (R. 390, 408.)

Despite these insignificant diagnostic findings, Smallwood continued to complain of pain. In January, 2004, Dr. Hasz recommended a third surgery, stating, "With his continued symptoms, we will plan to proceed with surgery to remove hardware, explore the fusion, possibly add posterolateral fusion, and perform hemilaminotomy due to lateral recess stenosis." (R. 233.) Noting previous EMG studies were within normal limits, he warned Smallwood that there may be no change after surgery; nevertheless, Smallwood wanted to proceed. (R. 233.) He waited for approval from his Workers Compensation carrier.[3] In December, 2005, Dr. Hasz considered a left SI injection, but instead noted that "as things seem to be improving at this time we will have him continue with just medications and a home exercise program." (R. 215.) Then, in March, 2006, Dr. Hasz changed his recommendation based on his review of Smallwood, stating, "I do not recommend any hardware removal. I do not recommend surgery. I recommend a left sacroiliac injection." (R. 211.) He continued Smallwood on anti-inflammatory

---

[3] The Worker's Compensation carrier ultimately settled the claim with Smallwood in August, 2006. (R. 142-43.)

medications and referred him to pain management, where he recommended Smallwood taper off some of his pain medication. (R. 211-12.)

On April 8, 2004, Smallwood was examined by an orthopaedic surgeon, Robert Gordon, M.D. (R. 229-31.) Examination revealed negative straight-leg raising test from a sitting position, but Smallwood complained of discomfort with only 20 degrees of straight leg raising on the left in a supine position, "which is inconsistent with the same test done from a sitting position and which is a nonphysiologic finding. He also complains of discomfort in his back with combined hip and knee flexion on the left which is also an inconsistent finding for a physiological back impairment." (R. 229.) Dr. Gordon stated neurological examination of lower extremities were within normal limits except for an area of sensory decrease in the left lateral lower leg. (R. 230.) Based on his review of the medical history and examination, Dr. Gordon stated he would be extremely hesitant to recommend any further surgery. (R. 230.) Dr. Gordon found that Smallwood's medical records and radiographic studies revealed no instability, that the hardware appeared to be in the appropriate position, that the nerve roots looked normal, and that there were no intra- or extradural filling defects. He stated, "Under those circumstances one would expect this patient to be doing a lot better than he is at this time, and I believe that his ongoing significant subjective complaints are at least to some extent on a functional rather than a physiological basis and also perhaps related to the fact that he is taking strongly addicting narcotic pain medication on a regular basis." (R. 230.) Dr. Gordon opined that Smallwood should be weaned off his narcotic pain medication and resume "some type of gainful employment." (R. 230.) He stated "he would be best

9

served by doing work of a light or sedentary nature rather than work that requires any heavy lifting or repeated bending." (R. 230.)

Based on a review of the diagnostic studies, which revealed no significant findings, another orthopedist, Kerry Donnelly, M.D., noted on April 12, 2007 that he had nothing to offer Smallwood. He recommended Smallwood get back into a pain management program "since he was previously in such a program and was doing pretty well with this." (R. 390.)

At the administrative hearing, Smallwood's wife testified that she had to assist him out of bed (R. 38), that he would lie in bed for a week at a time because he was in so much pain (R. 39), and that his condition deteriorated from 2002 to 2007. (R. 33.) However, medical notes reveal that in 2007, Smallwood changed a tire on his truck (R. 389) and fell off of a two foot ladder. (R. 394.) Moreover, he required no assistance with ambulation. (R. 32.) While it was not recommended that he return to work as an electrician, Dr. Hasz indicated on two occasions in 2003 and 2005 that Smallwood could return to a light-duty job. (R. 226, 265.) Dr. Gordon also recommended in 2004 that Smallwood return to this type of employment. (R. 230.) The state agency physicians opined that Smallwood could perform a range of light work. (R. 382-88; 399-405.)

The degree of limitation Smallwood claims is disproportionate to the objective medical findings. The ALJ properly concluded that Smallwood's complaints were not entirely credible. While plaintiff argues that Smallwood's persistent efforts to obtain pain relief enhance his credibility, the record suggests otherwise. It is clear from notations by Smallwood's own examining physicians that he engaged, at least in part, in drug-seeking behavior.

At various times, Smallwood was prescribed Methadone, MS Contin, Percocet, Vicodin, Voltaren, OxyContin, OxyIR, Naprosyn, and Lyrica for pain. Within one week of receiving his initial prescriptions for Vicodin and Volatren in May, 2002 (R. 340), he returned to the Virginia Spine Institute, reporting that he was unable to keep his symptoms under control and wished to change his medication regimen. (R. 309.) He was given a prescription for Ambien, MS Contin, and Percocet for breakthrough pain. (R. 309.) In August of the same year, office notes reveal he had run out of his prescriptions and experienced mild withdrawal symptoms. (R. 297.)

In September, 2002, Smallwood claimed his prescriptions for OxyContin and OxyIR were stolen one week after those prescriptions were written. (R. 292-94.) Smallwood asserted the drugs were stolen out of his car, but noted that he had purchased a safe to store his medications at home. (R. 292.) The prescriptions were refilled, but he was warned there would be no future refills for lost or stolen medication. (R. 292.) A telephone note from September 25, 2003, indicates that for the fourth or fifth time, Smallwood requested early refills of his pain medication, claiming he was leaving town to go to a funeral. (R. 264.)

In November 14, 2003, Smallwood reported he was using up to twelve Percocet per day for breakthrough pain in addition to Methadone. (R. 259.) Dr. Hasz had "a long discussion with [Smallwood] regarding his increasing amounts on [sic] the Percocet" and he was instructed to discontinue use of the drug. (R. 260.) He was prescribed OxyIR (R. 260), but called in December, 2003, and stated he was having difficulty finding a pharmacy that stocked the drug. (R. 263.) His prescription for Percocet was renewed. (R. 260.) On February 2, 2004, Smallwood's wife called and left a message at the

Virginia Spine Institute, claiming Smallwood needed early refills of his prescriptions for Methadone and Percocet because "her grandmother has passed away." (R. 255.) However, after the clinic returned her call, she changed her story, claiming the prescriptions had been stolen from a safe in her bedroom. (R. 255.) When she was informed there would be no refills for lost or stolen prescriptions, she demanded to make an appointment for Smallwood to come in to get prescription refills. (R. 255.)

In September, 2006, Smallwood once again reported his prescriptions had been stolen, along with a number of other items in his house. (R. 352.) At Dr. Hasz's recommendation, the narcotics were not refilled, but he was offered a prescription for Ultram or Ultracet. (R. 352.) Notes reveal, "He became quite frustrated with our decision not to refill or replace his narcotics. When I left the room to go and write the prescription for his Ultracet, Mr. Smallwood walked out of the office and out of the clinic without pain." (R. 352.) Dr. Hasz recommended Smallwood be discharged from the practice. (R. 352.)

In August, 2007, Smallwood presented to the University of Virginia Pain Management Center. (R. 407.) After Dr. Michael Cicchetti informed Smallwood that he would not take over prescribing Methadone, Smallwood "became very angry and disgruntled as well as threatening. The patient began cursing that he had wasted his time coming up here. He stormed out of the room and demanded that his mother follow." (R. 408.) It was recommended that in order to get future narcotics, Smallwood show logs of physical activity and therapy, and that he be referred to an addiction specialist. (R. 408-09.)

In this case, the ALJ applied the appropriate standard, considering both the objective medical evidence[4] and the subjective complaints of pain in making an RFC determination. The ALJ considered the credibility of Smallwood's complaints in light of the entire record. Credibility determinations are in the province of the ALJ, and courts normally ought not interfere with those determinations. See Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989); Melvin, 2007 WL 1960600, at *1; SSR 95-5p. There is plenty of evidence to support the ALJ's credibility determination in this case. As such, it is recommended that the Commissioner's decision be affirmed.

## IV.

Plaintiff also argues that this case should be remanded for consideration of an RFC assessment provided by Smallwood's treating physician, Dr. Hasz, on August 11, 2008. While this evidence was not before the ALJ at the time of her decision, it was submitted to the Appeals Council and incorporated into the record.

When deciding whether to grant review, the Appeals Council must consider evidence submitted to it, "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y, Dept. of Health & Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991) (en banc). Evidence is new if it is not duplicative or cumulative. Id. at 96. Evidence is material "if there is a reasonable possibility that the new evidence would have changed the outcome." Id. at

---

[4] Plaintiff argues that a medical expert opinion should be obtained "where additional medical evidence is received that could modify the State agency medical consultant's finding that the impairment(s) was not equivalent in severity to any impairment in the Listing of Impairments." (Pl.'s Br. 5.) Plaintiff does not refer specifically to any such additional medical evidence that might have changed the state agency's determination that his impairments did not equal a Listing. The ALJ determined that Smallwood did not meet any listed impairment, and this decision is supported by substantial evidence.

96. In this case, the Appeals Council considered the questionnaire completed by Dr. Hasz on August 11, 2008, and concluded that it did not provide a basis for changing the ALJ's decision as to disability. When the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner. <u>Wilkins</u>, 953 F.2d at 96; see 20 C.F.R. § 416.1481. The final decision of the Commissioner is then subject to judicial review. 42 U.S.C. § 405(g).

The appropriate standard of review of this remand request is sentence four of 42 U.S.C. § 405(g), rather than sentence six. For sentence four to apply, the judgment of the court must be based "upon the pleadings and transcript of record." 42 U.S.C. § 405(g). Sentence six, on the other hand, applies specifically to evidence not incorporated into the record by either the ALJ or the Appeals Council. As Dr. Hasz's RFC assessment was incorporated into the record by the Appeals Council, this case falls squarely within the plain language of sentence four, as the court's review is based on the "transcript of the record."[5]

The Fourth Circuit requires that reviewing courts consider the record as a whole, including the new evidence, in order to determine whether the Commissioner's decision is supported by substantial evidence. <u>See</u> <u>Wilkins,</u> 953 F.2d at 96. The court must determine whether there is a "reasonable possibility" that the interim evidence submitted to the Appeals Council and considered by it would have changed the outcome. <u>Id.</u> at 96.

In this case, Dr. Hasz's RFC assessment would not have changed the outcome of the ALJ's decision. Plaintiff offers no explanation as to why Dr. Hasz waited until

---

[5] On brief, the Commissioner refers to the requested remand as a "sentence six" remand. (Def.'s Br. 10.) The interim evidence at issue is not new evidence; the Appeals Council clearly reviewed it. (R. 2.) As such, this case is not eligible for a sentence six remand.
14

August 11, 2008, to fill out this form. As the Appeals Council correctly noted, Dr. Hasz had not treated Smallwood since the fall of 2006, more than one year before Smallwood died in December, 2007, and nearly two years before he opined retrospectively as to Smallwood's RFC.

In his RFC assessment, Dr. Hasz stated Smallwood could sit, stand or walk less than two hours in an eight hour workday, and occasionally lift less than ten pounds. (R. 459.) Dr. Hasz noted that these figures were only estimates, as Smallwood had not completed a functional capacity evaluation, although one had been recommended. (R. 459-60; see also R. 226.) He further stated that Smallwood's experience of pain and symptoms was severe enough to interfere often with his attention and concentration, and that he is likely to be absent from work four times per month. (R. 459-60.)

These limitations are inconsistent with Dr. Hasz's contemporaneous clinical findings and with the evidence of record. See discussion, supra, § III. Diagnostic studies following Smallwood's second surgery were insignificant, and much of Dr. Hasz's recommended treatment of Smallwood was based on his subjective complaints of pain. While Dr. Hasz recommended that Smallwood not return to work as an electrician "due to the heavy-duty nature of the work, as well as the elevation and construction aspects" (R. 265, 269), he advised that a functional capacity evaluation be completed[6] so that recommendations for activity levels could be made. (R. 226.) Dr. Hasz treated Smallwood over fifty times and never stated in his office notes that Smallwood was disabled from all work. Indeed, in August, 2003, and in January, 2005, Dr. Hasz noted that he recommended Smallwood return to light-duty work that would allow him to

---

[6] A functional capacity evaluation was never performed. (R. 460.)

change positions, which required lifting no more than 10 to 15 pounds, with no repetitive bending or twisting. (R. 226, 265.)

Smallwood asserts that great weight should have been given to Dr. Hasz's RFC determination because he was a treating physician. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Great weight was indeed given to the findings set forth in Dr. Hasz's contemporaneous treatment notes as regards Smallwood's ability to work. The ALJ took the work restrictions outlined by Dr. Hasz in his notes into account when formulating her RFC assessment. (R. 19.) The RFC determined by the ALJ includes a more restrictive range of light work than identified by the state agency physicians. (See R. 382-88; 399-405.)

Simply put, this late-filed RFC assessment does not change the disability calculus. The limitations provided by Dr. Hasz retrospectively are inconsistent with his own treatment records. Smallwood asserts that Dr. Hasz should have been re-contacted to iron out these inconsistencies. (Pl.'s Br. 10.) However, the evidence of record, including Hasz's treatment notes, the opinion of Dr. Gordon, and the findings of the state agency physicians, provides an adequate basis on which to determine disability. 20 C.F.R. § 404.1512(e). As such, there was no duty to re-contact Dr. Hasz. Examining the entire record as a whole, the undersigned finds that there is substantial evidence to support the Commissioner's decision.

## V.

At the end of the day, it is not the province of the undersigned to make a disability determination. It is the undersigned's role to determine whether the Commissioner's decision is supported by substantial evidence, and, in this case, substantial evidence

supports the ALJ's decision. In recommending that the final decision of the Commissioner be affirmed, the undersigned does not suggest that Smallwood is totally free of any distress. The objective medical record simply fails to document the existence of any physical and/or mental conditions which would reasonably be expected to result in total disability from all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating Smallwood's claim for benefits and in determining that his physical and mental impairments would not prevent him from performing any work. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Accordingly, the undersigned **RECOMMENDS** that the Commissioner's decision be affirmed and the defendant's motion for summary judgment be **GRANTED**.

The Clerk is directed to transmit the record in this case to James C. Turk, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

Enter this 1st day of April, 2010.

*/s/ Michael F. Urbanski*
United States Magistrate Judge